UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

  - against -                           Docket No. 99 Cr. 1193 (DLC)

JOSEPH SAPIA,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM**
(In relation To The Violation of Supervised Release)

                                            Anthony L. Ricco, Esq.
                                            Attorney For *Joseph Sapia*
                                            20 Vesey Street, Suite 400
                                            New York, New York 10007
                                            (212) 791-3919

Steven Z. Legon, Esq.
Of Counsel and on the Memorandum

# ANTHONY L. RICCO
*Attorney At Law*
20 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10007

TEL. (212) 791-3919   FAX. (212) 964-2926

STEVEN Z. LEGON, ESQ.
OF COUNSEL

February 9, 2021

**FILED BY E.C.F.**

Hon. Denise L. Cote
United States District Court Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:  **United States v. Joseph Sapia**,
           Docket No. 19 Cr. 1192 (DLC)

Dear Judge Cote:

      This letter is submitted as a sentencing recommendation for Joseph Sapia, who we are anticipating shall, with the permission of the court, enter a guilty plea to the various specifications set forth in the Violation of Supervised Release dated January 12, 2021. The defense requests that the court consider a non-custodial sentence with restrictive conditions, which will permit Joseph Sapia to receive necessary medical care, as well as mental health therapy and drug treatment, so that he may successfully recover from his COVID-19 infection, prevent reinfection, so that he may recapture his life and find redemption in his remaining senior years.[1]

      **I.  Preliminary Statement**

      There is no dispute that Joseph Sapia has a profound criminal history of involvement with narcotics dating back to his youth, which includes a New York state court conviction in 1974 for

---

[1] Based upon a review of Joseph Sapia medical records from Mt. Sinai hospital and from the James J. Peters Department of Veterans Affairs Medical Center, he has been diagnosed with symptoms known as post COVID-19 syndrome. Accordingly, Joseph Sapia's pulmonogist at Mt. Sinai and his primary care physician at the James J. Peters Department of Veterans Affairs Medical Center have directed and scheduled a regime of follow visits to evaluate, monitor and treat his post COVID-19 symptoms. These medical procedures have been directed because they are necessary to prevent the exacerbation of the symptoms and also to prevent reinfection of COVID-19.

narcotic trafficking, that carried a 15 year sentence, and his 1991 federal narcotics trafficking conviction, which resulted in the imposition of a 270 months (22.5 years) prison sentence.  From one perspective, Joseph Sapia appears to be an individual who many would say "has not learned his lesson" from his many years in both state and federal prison; that Joseph Sapia's conduct, now at age 74, demonstrates that he is neither capable of change, nor worthy of any exercise of discretion.  On the other hand, there are those who would say that Joseph Sapia remains a member of our community, who now more than ever, with his advancing age and his present high risk life threatening medical conditions, remains deserving of our efforts to help him have a life free of the influence of drugs and incarceration, along with proper medical care and attention.

This submission is an effort to bring to the attention of the court the aspects of the dynamics of Joseph Sapia life, which are presently unknown: to wit; that he is a loving supportive grandfather, and great grandfather who, at age 74, is experiencing a critical crisis of declining health, which has been exacerbated by his bout with a COVID-19 infection that resulted in his hospitalization and symptoms of the post COVID-19 syndrome.   Before Joseph Sapia contracted COVID-19, he was experiencing declining physical health as a result of his Type II diabetes, asthma, hypertension and other conditions.  This led to depression and his return to the use of cocaine, which led to his involvement in the underlying offenses, and his violation of supervised release.

From a traditional or standard law enforcement point of view, our criminal justice system may very well be out of options and out of patience for a man of Joseph Sapia's age and extensive criminal history.  However, for mental health experts who evaluate and treat chronic drug abuse, particularly drug abuse by senior citizens, Joseph Sapia's depression and descent into drug abuse, in the context of his declining health, can be addressed and corrected through counseling and therapy.[2]  Drug treatment and

---

[2]  The reasons that seniors become addicted to drugs or alcohol are complex and need to be addressed in outpatient addiction treatment programs that serve the needs of these unique individuals. https://recointensive.com/resources/seniors-older-adults-addiction-treatment/.   Z. Villainess (April 2019), "*Drug Addiction Among Senior Citizens: A Growing Crisis*," GoodTherapy Org:
https://www.goodtherapy.org/blog/drug-addiction-among-senior-citizens-a-growing-crisis-0405197#:~:text=Facts%20About%20Substance%20Abuse%20in%20Older%20Adults&text=An%20estimated%205.7%20million%20seniors,room%20for%20drug%2Drelated%20reasons; Kuerbis, A., Sacco, P., Blazer, D. G., & Moore, A. A. (2014), "*Substance Abuse*

2

mental experts who address the increasing phenomena of drug abuse in our senior population, have the view that at Joseph Sapia's advanced age he can benefit from counseling and therapy, and is capable of living out his remaining days as a responsible, aging member of our community. Counsel of the view that when the court has a more in depth perspective of the life of Joseph Sapia, outside of his criminal history, and has an opportunity to view him from a perspective that includes the completeness of his life, the court will have a more informed basis upon which to consider his application for a non-custodial sentence. This perspective includes an assessment of Joseph Sapia's critical declining health issues in the context of the COVID-19 pandemic, and the important role Joseph Sapia has in the life of his grandchildren, and great grandchildren.

It is from that modern, forward looking perspective, based upon the reasons detailed below, that counsel requests that the court consider a non-custodial sentence, at this juncture, with the imposition of strict conditions to ensure necessary medical care, drug treatment and mental health therapy.

## II. Background and Reasons To Consider a Non-Custodial Sentence

Joseph Sapia was born on November 17, 1946, and he is presently 74 years of age. Throughout the years, this court has addressed many manifestations of criminal conduct and the influence of the plague of the narcotics trade and the destruction it renders upon individuals, our communities, and our society. This court has had to impose substantial sentences, in some instances up to life imprisonment, upon those who have engaged in horrific acts of violence in furtherance of drug trafficking. There have also been a few defendants in our district who have been authorized for the death penalty and faced the possibility of the loss of life for acts of violence, including gruesome murders in furtherance of the drug trade. *See e.g.*, *United States v. Quinnones and Rodriguez*, 00 Cr. 761-2 (JSR); *See also*, *United States v. Griffin*, *including Farris Phillips*, 15 Cr. 334 (SHS). Over the decades, this court has imposed long prison terms

---

*Among Older Adults, Clinics in Geriatric Medicine*," 30(3), 629-654. Retrieved from https://www.ncbi.nlm.nih.gov/ pmc/ articles/PMC4146436; Arlene González-Sánchez, (April 2019) "*Substance Misuse in Older Adults*," Published by New York State Office of Alcoholism and Substance Abuse Services; https://behavioralhealthnews.org/ substance-misuse -in-older-adults/

upon defendants, some of whom, like Joseph Sapia, have been repeat narcotics distribution offenders. Those sentences have been imposed to protect the community from the criminal conduct of the offender, and also with the hope that the extended period of incarceration would provide the offender an opportunity for serious reflection and the possibility of redemption.

There have been some defendants who have utilized their prison time wisely, turned their lives around, and moved their lives in a positive direction.[3] Then there have been those, who even after long prison sentences, have gained their release and relapsed back into criminal conduct influenced by the drug trade. *See*, *United States v. Gerald Tisdale*, 15 Cr. 334 (RA)(Sentenced to 10 years in prison for relapsing into major drug trafficking after release from serving a 20 year sentence imposed in 2000). Having been directly involved in many of the cases referred to herein, counsel has become aware of the presence of factors that help explain why some improve their lives, while others find themselves caught in the malaise and cycle of incarceration resulting from the involvement in drug trafficking.

Each of the defendants who have gained their release after decades in prison have been individuals who have availed themselves of the educational programs and therapy offered by the Bureau of Prisons, and have, upon reflection and time, gained an insight to take control of their lives. They have found alternative ways of overcoming the obstacles present in our society that facilitate the revolving door of poor judgment, criminal conduct and imprisonment. Those individuals who have not availed themselves of the educational and therapeutic course offered by the Bureau of Prisons, find themselves in situations like Joseph Sapia, confronting life obstacles inappropriately; and find themselves back in the culture of drug trafficking, arrest and prosecution.

---

[3] For example, as a result of COVID-19, pre-existing at risk health concerns, Judges of this court have released defendant who convicted of life sentences. Those defendants have included, among others, Diego Rodriguez in United States v. Quinnones and Rodriguez, 00 Cr. 761 (JSR),(penalty phase jury imposed a life sentence); Peter Monsanto, in *United States v. Monsanto*, 87 Cr. 555 (LAP); Guy Fisher, United States v. Guy Fisher, 83 Cr. 150 (PAC); and Farris Phillips, United States v. Farris Phillips, 94 Cr. 631 (SHS) and Eric Mlillan, *United States v. Eric Millan*, et al., 91 Cr. 685 (LAP); William Underwood, *United States v. William Underwood*, 88 Cr. 822 (SHS).

Evidence of Joseph Sapia Criminal Conduct In Violation of Supervised Release

On January 8, 2021, Joseph Sapia was arrested in state of New Jersey, driving an automobile in the company of Christian Guzman, who, like Sapia, is a man with an prolific criminal history of drug trafficking.  Joseph Sapia, whose presence in New Jersey, by itself, was a violation of his condition of supervised release, as was his accompaniment of a known convicted felon, also a violation of his condition of supervised release.  When Joseph Sapia was pulled over and questioned by officers of the Palisades Interstate Police Department,  it was apparent that Joseph Sapia had recently ingested a white powdery substance which was in the area of his nose, underneath a PPE mask that he was wearing.  In response to basic questions, Joseph Sapia appeared under the influence of a controlled substance, and he was - cocaine.

Present in the vehicle, under the front passenger seat where Christian Guzman was riding, the officers recovered a bag with $45,560 in cash.  Sapia consented to a search of the vehicle and of his telephone.  From the telephone, law enforcement extracted text messages which appear to demonstrate that Joseph Sapia was recently involved in two narcotics transactions.

Joseph Sapia's Personal History

Joseph Sapia is far more than just a man in his mid 70s, whose was involved in a drug transaction, and arrested with evidence of such a transaction, and with a criminal history of engaging in significant narcotics transactions over a period of decades.

Military History

This court should know, that at one time in his life, Joseph Sapia was a promising young man from East Harlem, who served his nation during the height of the Vietnam War era.  Joseph Sapia served as a member of the United States Army, and was honorably discharged on May 20, 1968, after two years of active service at the rank of Sergeant.  During his tour of duty, Joseph Sapia served as a

member of the United States Army Pacific Command and upon discharge received the National Defense Service Medal, Armed Forces Expeditionary Medal (Korea), and a recognition as an Expert Rifleman, from a grateful nation.

After returning from his military service, Joseph Sapia embarked upon a difficult adult life journey, that as this court is aware included two substantial prison sentences for drug trafficking; New York State on November 20, 1974 (15 years to life); and S.D.N.Y. on September 20, 2000 (270 months, 10 years supervised release). After his return from state prison in 1989, up until his arrest on federal narcotics charges 10 years later in 1999,[4] Joseph Sapia made an attempt to become involved with the life of his children and was trying to make up for lost time.

During the time of his service in the United States Army, Joseph Sapia married Nadine Carrington on April 4, 1967, his high school sweetheart. One year prior to the marriage, Nadine Carrington gave birth to their son Derrick in 1966. Joseph Sapia and Nadine Carrington Sapia divorced in 1970, but have remained friends over the past 50 years. In 1976, while serving the 15 years to life sentence, Joseph Sapia married Debra Castro in a ceremony at the Attica Correctional Facility. That relationship produced two sons; Joseph Sapia, III, (born in 1974 - prior to his incarceration) and Michael Sapia (born in 1977, during his incarceration). Debra Castro and Joseph Sapia divorced in 1983. After his release from New York state prison in 1989, Joseph Sapia began a relationship with June Waters, who gave birth to their daughter, and his fourth child, Courtney Waters in 1990.

---

[4] A prior Presentence Investigation Report revealed that based upon information known to law enforcement, Joseph Sapia had a long term involvement in narcotics dating back to his teenaged years living in East Harlem. Within six months of his honorable discharge from military service, Joseph Sapia began his involvement in criminal activity. In less than one year, Joseph Sapia was convicted and sentenced to serve one year on Rikers Island. Over the ensuing years before his arrest in 1973, Joseph Sapia had served three separate jail sentences for the possession with the intent to sell or the possession of narcotics and narcotics paraphernalia totaling another one year and 3 months on Rikers Island. Seven years after his discharge from military service, Joseph Sapia was arrested in 1973 for a major New York State narcotics distribution charge under the then new Rockefeller Drug laws. That arrest was the basis of his substantial sentence of 15 years to life, which was imposed on November 20, 1974. At the time, Joseph Sapia was 28 years old.

6

From 1990 until his arrest on major federal narcotics distribution charges in 1999, other than a short employment with the United States Postal Service, Joseph Sapia did have any meaningful employment, although he had earned a high school diploma upon his graduation from Central Commercial high school in 1965.[5]  Joseph Sapia existed on money that he earned distributing narcotics. However, during this time period, Joseph Sapia began to develop a relationship with all of his children, which was interrupted by the 15 year prison sentence that he served from 1974 through 1989.  In fact, upon his release to parole in 1989, Derrick was a young adult, and a college graduate with a full time job with a major national retailer.  Joseph III, was age 15 years of age, and Michael was 12 years of age. Both younger boys enjoyed the company of a father that they hardly knew.  And, notwithstanding his involvement in narcotics, according to the Nadine Carrington Sapia, Joseph Sapia wanted to be an attentive father, but lacked the parenting skills to assist his children as they grew older.  Notwithstanding his lack of parenting skills, according to Nadine Carrington Sapia, Joseph Sapia made a real effort to be a father to his children.   As a result of his 1999 arrest on major federal narcotics distribution charges, Joseph Sapia was sentenced to 270 months (22.5 years) imprisonment, and forfeited the opportunity to have a meaning presence in the lives of his children.

It is a point of pride for Joseph Sapia, that today his children are all successful adults who have never been arrested nor had any contact with the criminal justice system.  Derrick Sapia has had an entire career in the retail clothing industry as a buyer for a major national retailer.  Derrick Sapia, who completed college, has had extensive travel to China as a buyer in the retail clothing industry.  Today, Derrick owns a retirement home in St. Martin, and travels between St. Martin and visiting with his mother Nadine Carrington Sapia in upstate New York. Joseph Sapia, III  is married with three children

---

[5]  After his discharge from the United States Army, the Veterans Administration helped Joseph Sapia obtain a job at the United States Post Office.  Joseph Sapia maintained this job for approximately one year, until he was terminated for stealing credit cards from the mail.  Joseph Sapia lost his only known job, and was sentenced to a one year prison term on Riker's Island in 1971.

and living in New Jersey. He works for a national bread company. Michael Sapia, who is recently divorced, has three children with his wife and he resides alone without the children in New York. Courtney Watson is single and is employed as a full time home attendant, who cares for her permanently disabled sister. Notwithstanding the many years of separation as a result of Joseph Sapia's prison sentences, Joseph Sapia maintains a positive and healthy relationship with his children, six grandchildren and two great grandchildren. Lisa Rice, Joseph Sapia's present spouse, reports that he devotes countless to baby sitting, helping with grandchildren with homework, providing guidance and engaged in family centered events. Ms. Rice, says its as if he is making up for all the years lost with his children, by showering his grandchildren and great grandchildren with love and affection.

Summary of Interviews with Nadine Carrington Sapia

Nadine Carrington Sapia, who has known Joseph Sapia for more than 58 years, provided counsel with a powerful insight into the life narrative and present mind set of Joseph Sapia. The purpose of the interview with Nadine Carrington Sapia, was to find information to help explain why at 74 years of age, Joseph Sapia is using cocaine and finds himself back in prison after so decades of incarceration.

Nadine Carrington Sapia is, in fact, an excellent long term historian of Joseph Sapia's life. Nadine Carrington Sapia informs counsel that Joseph Sapia has unresolved issues of childhood neglect and dysfunction in his family's home, which has remained a part of, and negatively influenced his entire life, and that of his three surviving siblings. Nadine Carrington Sapia reports that Joseph Sapia was the fifth and last child of his mother, Julia Castro and Joseph Sapia, Sr. Nadine Carrington Sapia informed counsel that Julia Castro had Victor Castro, an older son from a prior relationship. Nadine Carrington Sapia reports that in the early 1960s, the Sapia home was a dysfunctional place where anger, neglect and rage abounded. To escape, Joseph Sapia turned to the streets, along with his brothers Victor and Ernesto. All three brothers also served in military. Victor Castro, who was a few years older, served

8

prior to the beginning of the Vietnam War. However, Ernesto Sapia and Joseph Sapia were drafted during the Vietnam War era. Ernesto Sapia was sent to Vietnam, and Joseph Sapia was deployed to Korea. All three brothers returned damaged from their time of service in the military. According to Nadine Carrington Sapia, Joseph Sapia's exposure during his military service only served to compound the problems he experienced before being drafted. She describes his behavior as wild, and had not resemblance to the boy she feel in love with in high school.

In fact, both Victor and Ernesto lost their lives to chronic drug abuse and to drug overdoses; Ernesto at age 36 in 1985, and Victor at age 58 in 1994. And, Joseph Sapia's conduct became increasingly difficult for Nadine Carrington Sapia to manage, which resulted in their separation and ultimate divorce in 1970. Of the three remaining siblings, Joseph, Theresa and Josephine, each now in their seventies suffer from unresolved issues related to the neglect and psychological abuse they endured as children. In the view of Nadine Carrington Sapia, each are in the need of psychological therapy.

<u>Summary of Interviews with Lisa Rice</u>

The interview of Lisa Rice, Joseph Sapia's common law spouse since 2019, provides the most critical insight into the psychological well being and present physical and medical condition of Joseph Sapia.

First, the court should be aware that Lisa Rice is presently age 53, and was born and raised in New York City. Lisa Rice is a graduate of Columbus High School in the Bronx, and has attended both the Borough of Manhattan Community College and Bronx Community College. Lisa Rice has been gainfully employed by Mt. Sinai Hospital for the past 31 years as a Health Information Specialist, has over years taken many courses for professional certification related to her work at Mt. Sinai. Lisa Rice has never been arrested or has she had any contact with the criminal justice system, other than jury duty, and reports that she has never used drugs or attempted to use drugs at any time during her life.

Lisa Rice, is a mother of two adult sons, and a grandmother of two grandsons. Lisa Rice's oldest son is Justin Spencer, who is presently 34 years old, has attended two years of college, and is gainfully at Mt. Sinai hospital, and is married with two children. Lisa Rice's youngest son is Amir Stewart, who is 21 years of age, a graduate of the Frederick Douglass Academy in Harlem, and is presently expecting to graduate with his college degree in June of 2021. Lisa Rice's sons have never been arrested, nor have they ever had any contact with the criminal justice system. Lisa Rice met Joseph Sapia in a pubic setting, and their relationship began as a friendship that developed into a romantic relationship. The above information is provided to give the court some background on the individuals, like Lisa Rice, who have assisted counsel in obtaining background, history, and character information, as well as the present medical condition and status of Joseph Sapia. Lisa Rice, like Nadine Carrington Sapia, is a solid citizen, a mature responsible adult who provided counsel with information that is critical to the court's ultimate determination of the appropriate sentence to be imposed as a result of the violations of supervised release in this case.

Joseph Sapia Present Medical Condition

Lisa Rice reports to counsel that for the past 12 months or so, Joseph Sapia has been suffering from declining physical and psychological health. Lisa Rice advised counsel that when they first met, Joseph Sapia was upbeat and family oriented, and spent meaningful time with both his and her grandchildren, and that most, if not all of their activities revolved around family gatherings. Lisa Rice reports that Joseph Sapia's declining health related to his chronic asthma, hypertension and type II diabetes have combined to debilitate his physical health. According to Lisa Rice, it would become difficult for Joseph Sapia to walk more than one or two blocks without extreme difficulty breathing. Joseph Sapia also complained about blurred vision, dizziness and issues with severe vertigo. According to Lisa Rice, these problems were related to his diabetes, hypertension, asthma, issues with his prostate,

10

and high cholesterol. In response to these conditions, Joseph Sapia was under the medical care of his primary physician at the James J. Peters Department of Veterans Affairs Medical Center in the Bronx, and was undergoing a series of comprehensive examinations to evaluate and treat his ailments and declining health. Lisa Rice reported than in the Spring and Summer of 2020, Joseph Sapia's mental health began to steadily decline, commensurate with the increase threat of the presence of COVID-19. In addition to his declining physical condition, Joseph Sapia became paranoid and fearful of contracting the COVID-19 infection because of his compromised health condition. Joseph Sapia's overall health situation left him depressed, with extreme mood swings.

It was also during this time period that Lisa Rice discovered a small amount of a white powdery substance inside a folded dollar bill at home. Upon the discovery, Lisa Rice was alarmed and flushed the substance down the toilet out of fear. When Lisa Rice confronted Joseph Sapia, he was in denial and claimed that he was not using drugs. Joseph Sapia became increasingly depressed over the summer months and into Fall of 2020. With this arrest, Lisa Rice now realizes that during the summer, Joseph Sapia was ingesting cocaine, which only served to make his problems worst.

COVID-19 Pneumonia

According to the protocols identified by Centers for Disease Control and Prevention, Joseph Sapia's age, along with his pre-existing medical conditions - which include Type II diabetes, hypertension and asthma - placed him at high risk of COVID-19 infection. And, in fact, on November 17, 2021, COVID-19 tests were administered to both Lisa Rice and Joseph Sapia in relation to Lisa Rice's employment at Mt. Sinai. On the next day, Lisa Rice and Joseph Sapia were both informed by Mt. Sinai that they had tested positive for COVID-19, and were instructed to self quarantine at home and to closely monitor conditions, such as a spiked temperature, and difficulty breathing *inter alia*. As a result of Joseph Sapia's age, they were instructed to immediately return to Mt. Sinai should there be

any noticeable change in his symptoms.

Over the days following those instructions, Lisa Rice's symptoms improved, but Joseph Sapia's medical condition was on a steady decline. By November 26, 2020, Joseph Sapia had extreme difficulty breathing, a loss of appetite, was consistently spiking a high temperature, and his oxygen level was dropping below a reading of 89.[6] Lisa Rice responded by trying to take Joseph Sapia to the hospital, but he passed out at the door exiting the apartment. She called 911, and an ambulance arrived and rushed Joseph Sapia to Mt. Sinai hospital. Joseph Sapia was admitted, immediately placed on oxygen and intravenous fluids, and remained hospitalized for with a diagnosis of COVID-19 pneumonia until December 1, 2020, when he was discharged, and directed to return for several follow up visits.

Upon his return home from his hospitalization, Joseph Sapia was extremely depressed, had mood swings and was at times very agitated. Although discharged from Mt. Sinai hospital, Joseph Sapia had several post COVID-19 lingering conditions which required continued medical evaluation and treatment, and return visit to Mt. Sinai.

Post COVID-19 Medical Care

At Mt. Sinai hospital, Joseph Sapia was treated by Dr. Barbara Mann, a Pulmonologist and critical care medicine specialist. As a result of Joseph Sapia's complaints of post COVID-19 breathing difficulties, continued dizziness, and vertigo problems, Dr. Mann ordered a series of tests to determine and evaluate the existence of any symptoms of post COVID-19 syndrome. On December 30, 2020, Dr. Mann concluded that the Computerized Tomography (CT) scan performed at Mt. Sinai hospital revealed that Joseph Sapia has the existence of scarring and inflammation in his lungs directly related

---

[6] During his treatment for diabetes and asthma, the Veteran's hospital provided Joseph Sapia with a Glucometer and an a Pulse Oximeter. A pulse oximeter is a tiny device that slides over the fingertip and uses infrared light refraction to measure how well oxygen is binding to red blood cells. A Glucometer is a small, portable machine that's used to measure how much glucose is in the blood. People with diabetes use a blood glucose meter to help them manage their condition. On Pulse Oximeter was sending red flags.

to the COVID-19 infection. In addition, the CT scan also revealed a tiny lung nodule, which Dr. Mann advised required a follow up chest CT scan within 3 months. This follow up examination was necessary to assess improvement in the diagnosed condition, and to monitor his recovery from COVID-19.

Follow Up  Visits Directed By Dr. Barbara Mann

1. A follow up visit is presently scheduled with Dr. Doris L. Hertzfeld, an Ophthalmologist at the James J. Peters Department of Veterans Affairs Medical Center, Bronx New York on March 8, 2021 to evaluate, assess and treat Joseph Sapia's post COVID-19 blurred vision, dizziness and vertigo.

2. A follow up visit is presently scheduled with Dr. Robert S. Bernstein, an Endocrinologist at Mt. Sinai hospital on March 22, 2021, to evaluate and monitor Joseph Sapia's post COVID-19 condition of his diabetic state.

3. Lisa Rice was contacted on February 8, 2021 by Dr. Aditi Mathur, a Pulmonologist, and Assistant Professor of Medicine, Division of Pulmonary & Critical Care at Mt. Sinai hospital for the scheduling of the follow up CT scan ordered by Dr. Mann on December 30, 2021, related to the scaring and inflammation of the lungs, along with the evaluation and treatment of tiny lung nodule.

4. On February 3, 2021, Joseph Sapia missed an appointment at the Mt. Sinai hospital for the teaching of the use of the Glucometer post COVID-19, as result of his present incarceration.

5. On February 17, 2021, Joseph Sapia is scheduled for his first COVID-19 vaccination. At Joseph Sapia's age, with his history of comorbidities, and the presence of symptoms of the post COVID-19 syndrome, vaccination is absolutely critical for his long term survival.[7]

While incarcerated Joseph Sapia is unable to avail himself to the follow up medical care and

---

[7] According to the Centers for Control Disease and Prevention, at this time, experts do not know how long someone is protected from getting sick again after recovering from COVID-19. The immunity someone gains from having an infection, called natural immunity, varies from person to person. Some early evidence suggests natural immunity may not last very long, particularly those who are at high risk of infection.  In addition, the risk factors associated with post COVID-19 syndrome are still being researched - which is precisely why Dr. Mann ordered that Joseph Sapia have the follow up treatments and additional CT scans.                     .

treatment to continue the maintenance of his health and to ensure his recovery from symptoms that have, in fact, been detected as being associated with the post COVID-19 syndrome. Notwithstanding the fact that the deprivation of care for a diagnosed life threatening condition is an Eighth Amendment violation, setting conditions for Joseph Sapia's release so that he can avail himself of the medical care to treat the symptoms that have claimed the lives of 465,083 Americans in 12 months is the humane course of action to be taken.

### III. Proposed Sentence or/in the Alternative Release on Conditions of Bail

Recommended Non-Custodial Sentence

The court has broad discretion in imposing a sentence for a violation of supervised release. On a violation to a Grade B specification, the Guidelines range is 6 to 12 months incarceration.[8] Thank God that under the circumstances confronted by the court with an elderly offender such a Joseph Sapia, the Guidelines are merely advisory. If a defendant violates one of the conditions of supervised release, the court may modify the conditions, terminate the supervised release before the original expiration date, or revoke supervised release and impose a term of imprisonment. 18 U.S.C. § 3583(e). The court must, however, consider the same factors from 18 U.S.C. § 3553(a) that the court initially considered in imposing the term of supervised release. *Id.*

Under 18 U.S.C. §3553(a)(2)(D), the court must consider whether the sentence imposed shall afford a defendant medical care or other correctional treatment in the most effective manner. At the present time, Joseph Sapia is not receiving any care for his individualized high risk exposure. Dr. Mann and already determine and directed necessary medical treatments to evaluate, treat and properly monitor

---

[8] The length of a term of supervised release and the conditions of the supervised release are covered by guidelines in Chapter Five of the *Guidelines Manual*. Specifically, Guideline 5D1.2 (Term of Supervised Release) addresses the length, and Guideline 5D1.3 (Conditions of Supervised Release) addresses the mandatory and discretionary conditions of supervised release. Chapter Seven of the *Guidelines Manual* addresses violations of the conditions of supervised release. In particular, Guidelines 7B1.1-1.4 cover the classification and reporting of violations and possible responses to a violation, including revocation and imprisonment.

14

the diagnosed symptoms of post COVID-19 syndrome.[9] At a time period when defendants in Joseph Sapia's age group (over 70 years of age) and history of pre-existing medical conditions, which place them at high risk of COVID-19 infection, are being released by Judges of our courts from the custody of the Bureau of Prisons pursuant to applications for compassionate release, and former Attorney General Barr's Memorandum dated April 3, 2021, it cannot rationally and reasonably be argued that Joseph Sapia is not at great risk of serious injury from COVID-19 reinfection or death while in custody.   See, e.g, *United State v. Hernandez,* 451 F.Supp.3d 301 (SDNY 2020).

As stated above, at this time, experts do not know how long someone is protected from getting sick again after recovering from COVID-19.  The immunity that is gained from having an infection, called natural immunity, varies from person to person.   According to the Centers for Disease Control and Prevention, some early evidence suggests that natural immunity may not last very long, particularly in those who are at high risk of infection.  In addition, the risk factors associated with post COVID-19 syndrome are still being researched - which is precisely why Dr. Mann ordered that Joseph Sapia receive follow up treatment to care for his multitude of his residual COVID-19 symptoms.

It is as a result of the foregoing, that counsel has requested that the court impose a non-custodial sentence and reinstate Joseph Sapia to supervised release.  However, it is requested that the court impose the following severe conditions:

1.       A period of home detention, with the defendant being permitted to leave the home with the prior permission of Probation to (1) attend required medical treatments and appointments; (2) attend the necessary drug counseling and treatment, along with mental health therapy sessions as directed by the staff at The Start Treatment and Recovery Center (whose director has been consulted in relation to

---

[9]       In fact, the Westchester County Jail officials have no clue of the high risk of reinfection of COVID-19 and the high risk of a failed recovery exists in relation to Joseph Sapia.   No person on the medical staff has endeavored to obtain Joseph Sapia's medical records nor to consult with Dr. Mann at Mt. Sinai or Dr. Adegboyega Adebayo, his primary care physician at the James J. Peters Department of Veterans Affairs Medical Center, Bronx New York.   Joseph Safia was placed in quarantined unit, with no plan for the follow up procedures that highly experienced experts who have actually treated him, reviewed his medical records, and have performed required tests have directed are, in fact, necessary.

this application) located 119 West 124th Street, New York, New York, or another drug treatment and or mental health treatment program directed by the United States Probation Office; (3) to attend a necessary meeting with defense counsel. To give this recommendation added strength, defense counsel proposes that the court promise the imposition of consecutive jail sentences to the specifications should Joseph Sapia violate any condition of the reinstatement to supervised release.

      2.      In the alternative, defense counsel requests that the court release Joseph Sapia on strict conditions of bail on the terms set forth above, and continue sentencing until such time as Joseph Sapia has medically completed his recovery from the symptoms of COVID-19 syndrome, has been vaccinated, and when the government can assure the court that Joseph Sapia can be safely held in custody and free from COVID-19.

### IV.  Conclusion

For the reasons set forth above, defense counsel has respectfully requests that the court consider reinstating Joseph Sapia to supervised release under the conditions recommended above. The request is made as a result of the extraordinary and compelling circumstances our justice system has faced as a result of the COVID-19 pandemic. I have brought to the attention of the court the exemplary background information of Nadine Carrington Sapia, Joseph Sapia's wife of 53 years ago, along with exemplary background information related to his present partner Lisa Rice. Both women have persevered through the difficulties of life, have worked hard, raised exemplary boys to become educated productive responsible men of achievement. Both women have pledged to take responsibility to assure compliance should the court restore Joseph Sapia to supervised release under restrictive conditions (and report to Probation). I have found both women, who are mature grandparents with a life time of hard work and commitment, reliable to partner and assure that Joseph Sapia receives his necessary medical care, along with mental health therapy to determine why a man in his mid 70s has returned to the use of cocaine - which is at the basis of his conduct which led to a violation of the conditions of supervised

16

release in the case. Lisa Rice reported to counsel that Joseph Sapia was in declining physical and emotional health in the months prior to the COVID-19 infection, and that he was suffering from depression, and that the COVID-19 infection only served to worsen and exacerbate those conditions.

Both Nadine Carrington Sapia and Lisa Rice are deeply disappointed and saddened that Joseph Sapia finds himself engaged in activity that very well may cause him to live his remaining years in a prison facility. Information was provided about Joseph Sapia's grandchildren and great grandchildren so that this court would be aware, that notwithstanding his profound criminal history, there exists a man capable of being a loving, guiding member of his family in his twilight years. Nadine Carrington Sapia and Lisa Rice have indicated that each is available and willing to be interviewed by the court, so that the court can assess their qualities to assure compliance. Both women naturally love Joseph Sapia, and each fears that his life is presently in jeopardy. Both women are interested in working hard, under the terms and conditions imposed by the court, to give Joseph Sapia this last chance for redemption, and at the same time, save his life from the grips of the deadly COVID-19 pandemic.

Dated: New York, New York
       February 9, 2021

                                        Respectfully submitted,

                                        *Anthony L. Ricco*
                                        Anthony L. Ricco, Esq.

cc:  A.U.S.A. Kevin Mead (By Email & ECF)